## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| AMERICA'S HEALTH & RESOURCE CENTER, LTD., an Illinois corporation, and AFFILIATED HEALTH GROUP, LTD., an Illinois corporation, individually and as the representatives of a class of similarly-situated persons, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 16-CV-9281 |
| v. | ) ) | Hon. Harry D. Leinenweber |
| PROMOLOGICS, INC., d/b/a HEALTH-SCRIPTS, JANSSEN PHARMACEUTICALS, INC., and JOHN DOES 1-12 | ) ) ) ) | |
| Defendants. | ) | |

## AMENDED CLASS ACTION COMPLAINT

Plaintiffs America's Health & Resource Center, Ltd. ("America's Health") and Affiliated Health Group, Ltd. ("Affiliated") (together, "Plaintiffs"), bring this action on behalf of themselves and all other persons similarly situated and, except for those allegations pertaining to Plaintiffs or their attorneys, which are based upon personal knowledge, allege the following upon information and belief against defendants PromoLogics, Inc. d/b/a Health-Scripts ("Health-Scripts"), Janssen Pharmaceuticals, Inc. ("Janssen"), and John Does 1-12 (collectively "Defendants"):

## PRELIMINARY STATEMENT

1.     Defendants have sent advertisements by facsimile in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the regulations the Federal Communications Commission ("FCC") has prescribed thereunder, 47 C.F.R.

§ 64.1200 (collectively, the "TCPA").

2.     Defendants sent Plaintiffs at least one advertisement by facsimile and in violation of the TCPA. Exhibit A. Exhibit A lacks any opt-out notice on its first page.

3.     Plaintiffs bring this action on behalf of themselves and a class of all similarly-situated persons, and against Defendants, seeking statutory damages for each violation of the TCPA, trebling of the statutory damages, injunctive relief, compensation and attorney fees (under the conversion count), and all other relief the Court deems appropriate under the circumstances.

4.     Unsolicited faxes cause damage to their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. Unsolicited faxes tie up the telephone lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message. Moreover, a junk fax interrupts the recipient's privacy. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else.

5.     The TCPA prohibits the use of "any telephone facsimile machine, computer or other device to send, to a facsimile machine, an unsolicited advertisement…." 47 U.S.C. § 227 (b)(1)(C). The TCPA defines an "unsolicited advertisement" as "**any** material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that

2

person's prior express invitation or permission…." *Id.*, § 227 (a)(5) (emphasis added).

6.     Defendants' fax advertises Health-Scripts' marketing services.

7.     Defendants' fax advertises a presentation promoting Janssen's pharmaceutical products.

8.     Defendants' fax advises the recipients of legal restrictions that are placed on pharmaceutical presentations.

9.     Health-Scripts' clients are companies in the healthcare and pharmaceutical industry and Defendants' RSVP form seeks consent to send additional offers from healthcare companies. Exhibit A.

10.     Health-Scripts sells its marketing services to its health care partners and sends additional fax advertisements based upon information it receives from the RSVP forms.

## PARTIES, JURISDICTION, AND VENUE

11.     Plaintiff America's Health is an Illinois corporation with its principal place of business in Cook County, Illinois.

12.     Plaintiff Affiliated is an Illinois corporation with its principal place of business in Cook County, Illinois.

13.     On information and belief, defendant Health-Scripts is a North Carolina corporation with its principal place of business in Cary, Wake County, North Carolina.

14.     On information and belief, defendant Janssen is a Pennsylvania

corporation with its principal place of business in Titusville, New Jersey.

15. The John Doe Defendants 1-12 are persons yet unknown to Plaintiffs that actively participated in the transmission of fax advertisements to the class, or benefitted from those transmissions.

16. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

17. Specific personal jurisdiction exists over Health-Scripts in Illinois because it has transacted business and committed tortious acts within the State.

18. General personal jurisdiction exists over Janssen in Illinois because it markets and offers its pharmaceutical products for sale within the State.

19. Specific personal jurisdiction exists over Janssen in Illinois because it has transacted business and committed tortious acts within the State.

20. Venue is proper in the Northern District of Illinois because Defendants committed statutory torts within this District and a significant portion of the events took place here.

## FACTS

20. Janssen is a pharmaceutical company that provides medications and treatments for an array of health concerns in several therapeutic areas, including Invokana and other medications used for patients with type 2 diabetes.

21. PromoLogics, Inc. is a specialty pharma marketing agency exclusively focused on nurse practitioners and physicians assistants that works to differentiate and maximize their clients' brands.

22.     Health-Scripts, a dba of PromoLogics, Inc., offers networking services to nurse practitioners and physicians assistants promising to connect participants to leading pharmaceutical companies and healthcare organizations.

23.     Janssen sponsored and created the content for a "promotional educational activity" titled "Treatment Options for Adult Patients with Type 2 Diabetes Mellitus: Starting With the Patient." Exhibit A.

24.     Janssen's speaker was to present on behalf of Janssen and communicate with attendees about Janssen's medicines. Exhibit A.

25.     Defendants sent advertisements by facsimile to Plaintiffs and a class of similarly-situated persons. Whether Defendants did so directly or with the assistance of a third party (yet unknown to Plaintiffs), Defendants are directly liable for violating the TCPA.

26.     Plaintiffs have received at least one of Defendants' advertisements by facsimile. A true and correct copy of the May 29, 2016 fax is attached as Exhibit A. Plaintiffs intend to discover the number of other Defendants' advertisements sent to Plaintiffs by fax.

27.     Exhibit A is three-page document Defendants sent by fax, advertising a "promotional educational activity" sponsored and created by Janssen for nurse practitioners and physician assistants.

28.     Exhibit A is a pretext for a presentation about Janssen's medicines. The program is not accredited. The program content was developed by Janssen Pharmaceuticals, Inc. The program is a communication about Janssen's medicines.

Exhibit A. ("Speakers present on behalf of the company and are required to present information in compliance with FDA requirements for communications about its medicines.")

29. The fax advertises the commercial availability or quality of Janssen's pharmaceutical goods and products by promoting Janssen as one of the best names in health care and recruiting registrants for Janssen's promotional activity presenting information about its medicines.

30. Exhibit A prominently includes Janssen's name and logo.

31. Exhibit A informs recipients that, in addition to dinner, they may receive other items of value.

32. Exhibit A informs recipients that their identity and the value of any items they receive may be publicly disclosed.

33. Exhibit A is a pretext for advertisement of Health-Scripts' for-profit healthcare marketing services.

34. If one goes to the hyperlink on Defendants' fax as instructed— www.Health-Scripts.com/rsvpD2—one sees the RSVP to Educational Dinner Program page. Exhibit B.

35. The online RSVP requires the entry of a name, email address, specialty, practice name, business address, phone number and NPI number.

36. At the bottom of the online RSVP to Educational Dinner Program page, there is a link to Health-Scripts Privacy Policy. Exhibit C.

37. Exhibit A requests the recipient's name, specialty, address, email, and

phone number.

38.    Exhibit A states, "By submitting this form, I understand that I am giving Health-Scripts permission to use my personal information to provide me with information and offers from healthcare companies." Exhibit A.

39.    Health-Scripts' privacy policy makes clear that Health-Scripts collects names, addresses, phone numbers, fax numbers, email addresses, and other demographics. Exhibit C.

40.    Health-Scripts' privacy policy informs its readers that by participating in Defendants' educational programs they are agreeing to be an " 'opted-in' participant with [Health-Scripts] for the purpose of conforming with any applicable federal, state and local laws relating to solicitations, including via email, telephone or fax." Exhibit C. Health-Scripts' privacy policy further informs readers that contact information will be used to provide information about Health-Scripts' clients' products and services. Exhibit C.

41.    Exhibit A advertises the commercial availability or quality of Health-Scripts' marketing and promotional services by informing recipients that Health-Scripts "partner[s] with the best names in health care to helps you help patients" and by collecting data for its marketing services.

42.    Exhibit A includes Health-Scripts' logo, motto, name, address, and contact information on the first page and includes Health-Scripts' logo and motto on its second and third pages.

43.    Exhibit A does not include the mandatory opt-out notice required by

the TCPA. *See* 47 U.S.C. § 227 (b) (2) (D) & (E) and 47 C.F.R. § 64.1200 (a) (4) (iii) & (v).

44.     Instead, <u>Exhibit A</u> provides confusing and contradictory instructions. Defendants provide a check box for those seeking to be removed from Defendants' list, but inform the recipients that completion of the form grants Health-Scripts permission to contact the recipient with offers. <u>Exhibit A</u>.

45.     Defendants' privacy policy further conflicts with the confusing and contradictory instructions as the privacy policy informs the reader that a written request is required for removal. <u>Exhibit C</u>.

46.     Plaintiff America's Health did not expressly invite or give permission to anyone to send <u>Exhibit A</u> to it. The fax was printed using America's Health's paper and toner and wasted the time of its employees. Even if America's Health had consented to Defendants sending <u>Exhibit A</u> to it, however, the lack of an opt-out notice on Defendants' fax makes consent irrelevant.

47.     Plaintiff Affiliated did not expressly invite or give permission to anyone to send <u>Exhibit A</u> to it. The fax was received on Affiliated's fax machine, at Affiliated's fax number and telephone line. Even if Affiliated had consented to Defendants sending <u>Exhibit A</u> to it, however, the lack of an opt-out notice on Defendants' fax makes consent irrelevant.

48.     On information and belief, Defendants sent advertisements by facsimile to Plaintiffs and more than 39 other persons in violation of the TCPA.

49.     Plaintiffs and the other class members owe no obligation to protect

their fax machines from Defendants or to avoid their receipt of unsolicited advertisements. Their fax machines are ready to send and receive their urgent communications, or private communications about patients' medical needs, not to receive Defendants' unlawful advertisements.

<u>CLASS ACTION ALLEGATIONS</u>

50.     Plaintiffs bring this action as a class action on behalf of themselves and all others similarly situated as members of a class, initially defined as follows:

> Each person that was sent one or more facsimiles from Health-Scripts and Janssen Pharmaceuticals inviting them to participate in a promotional educational program that did not state on its first page that the fax recipient may request that the sender not send any future fax and that the failure to comply with such a request within 30 days would be unlawful.

Plaintiffs expressly reserve the right to modify the proposed class definition or propose subclasses.

51.     Excluded from the class are Defendants, any entity in which Defendants have a controlling interest, each of Defendants' officers, directors, legal representatives, heirs, successors, and assigns, and any Judge assigned to this action, including his or her immediate family.

52.     On information and belief, Defendants' fax advertising campaigns involved other, substantially-similar advertisements also sent without the opt-out notice required by the TCPA. Plaintiffs intend to locate those advertisements in discovery. <u>Exhibit D</u>, a Demand for Preservation of All Tangible Documents Including Electronically Stored Information.

53.     This action is brought and may properly be maintained as a class

action pursuant to Fed. R. Civ. P. 23. This action satisfies Rule 23 (a)'s numerosity, commonality, typicality, and adequacy requirements. Additionally, prosecution of Plaintiffs' claims separately from the putative class's claims would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

54.     **Numerosity/impracticality of joinder.** On information and belief, the class consists of more than 39 persons and, thus, is so numerous that individual joinder of each member is impracticable. The precise number of class members and their identities are unknown to Plaintiffs, but will be obtained from Defendants' records or the records of third parties.

55.     **Commonality and predominance.** There is a well-defined community of interest and common questions of law and fact that predominate over any questions affecting only individual members of the class. These common legal and factual questions, which do not vary from one class member to another, and which may be determined without reference to the individual circumstances of any class member, include, but are not limited to the following:

        a.      Whether Defendants sent facsimiles promoting the commercial availability or quality of property, goods, or services;

        b.      Whether Exhibit A, and other yet-to-be-discovered facsimiles sent by or on behalf of Defendants, advertised the commercial availability or

quality of property, goods or services;

       c.    The manner and method Defendants used to compile or obtain the list(s) of fax numbers to which they sent the faxes contained in <u>Exhibit A</u> and other fax advertisements;

       d.    Whether Defendants' fax advertisements contained opt-out notices as required by the TCPA;

       e.    Whether Plaintiffs and the other class members are entitled to statutory damages;

       f.    Whether, if the Court finds that Defendant(s) willfully or knowingly violated the TCPA, the Court should exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than three times the amount;

       g.    Whether the Court should enjoin Defendants from faxing advertisements in the future; and

       h.    Whether Defendants' conduct as alleged herein constituted conversion.

56.    **<u>Typicality of claims.</u>** Plaintiffs' claims are typical of the claims of the other class members, because Plaintiffs and all class members were injured by the same wrongful practices. Plaintiffs and the members of the class received Defendants' advertisements by facsimile and those advertisements did not contain the opt-out notice required by the TCPA. Under the facts of this case, because the focus is upon Defendants' conduct, if either or both of Plaintiffs prevails on its or

their claims, then the other putative class members will prevail as well.

57. **Adequacy of representation.** Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the class they seek to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation, and TCPA litigation in particular, and Plaintiffs intend to vigorously prosecute this action. Plaintiffs and their counsel will fairly and adequately protect the interest of members of the class.

58. **Prosecution of separate claims would yield inconsistent results.** Even though the questions of fact and law in this action are predominantly common to Plaintiffs and the putative class members, separate adjudication of each class member's claims would yield inconsistent and varying adjudications. Such inconsistent rulings would create incompatible standards for Defendants to operate under if/when class members bring additional lawsuits concerning the same unsolicited fax advertisements of if Defendants choose to advertise by fax again in the future.

59. **A class action is the superior method of adjudicating the common questions of law or fact that predominate over individual questions.** A class action is superior to other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all class members is economically unfeasible and procedurally impracticable. The likelihood of individual class members prosecuting separate claims is remote, and even if every class member could afford individual litigation, the court system would be unduly

burdened by individual litigation of such cases. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the class would be proper. Plaintiffs envision no difficulty in the management of this action as a class action.

## COUNT I
## TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227

60.    Plaintiffs incorporate the preceding paragraphs as though fully set forth herein.

61.    Plaintiffs bring Count I on behalf of themselves and a class of similarly situated persons against Defendants.

62.    The TCPA prohibits the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine…." 47 U.S.C. § 227 (b) (1).

63.    The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's express invitation or permission." 47 U.S.C. § 227 (a) (4).

64.    Exhibit A advertises the commercial availability or quality of Janssen's pharmaceuticals by promoting Janssen as one of the best names in health care and recruiting registrants for Janssen's presentation on its medications.

65.    Exhibit A advertises the commercial availability or quality of Health-Scripts' marketing and promotional services by informing recipients that Health-

13

Scripts "partner[s] with the best names in health care to helps you help patients" and by collecting data for its marketing services.

66.     Health-Scripts gathers the data from registrations to Defendants' "educational" programs and then sells its fax and telephone marketing services to top healthcare companies.

67.     Defendants sent <u>Exhibit A</u> to Plaintiffs and others offering a "promotional educational activity."

68.     Registration for Defendants' promotional activity grants consent to receive future advertising.

69.     The TCPA provides a private right of action as follows:

> 3.     <u>Private right of action</u>. A person may, if otherwise permitted by the laws or rules of court of a state, bring in an appropriate court of that state:
>
>> (A)     An action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>>
>> (B)     An action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
>>
>> (C)     Both such actions.

47 U.S.C. § 227 (b) (3).

70.     The Court, in its discretion, may treble the statutory damages if it determines that a violation was knowing or willful. 47 U.S.C. § 227 (b) (3).

71.     Here, Defendants violated 47 U.S.C. § 227 (b) (1) (C) by sending advertisements by facsimile (such as <u>Exhibit A</u>) to Plaintiffs and the other class

members without their prior express invitation or permission.

72.     The TCPA requires that every advertisement sent by facsimile must include an opt-out notice clearly and conspicuously displayed on the bottom of its first page. 47 U.S.C. § 227 (b) (2) (D) and (E); 47 C.F.R. § 64.1200 (a) (4).

73.     Defendants failed to include a clear and conspicuous opt-out notice on Exhibit A.

74.     The TCPA expressly mandates the form and content of an opt-out notice. 47 U.S.C. § 227 (b) (2) (D) & (E), in relevant part, states:

> In implementing the requirements of this subsection, the Commission ...
>
> (D) shall provide that a notice contained in an unsolicited advertisement complies with the requirements under this subparagraph only if...
>
> (i) the notice is clear and conspicuous and on the first page of the unsolicited advertisement;
>
> (ii) the notice states that the recipient may make a request to the sender of the unsolicited advertisement not to send any future unsolicited advertisements to a telephone facsimile machine or machines and that failure to comply, within the shortest reasonable time, as determined by the Commission, with such a request meeting the requirements under subparagraph (E) is unlawful;
>
> (iii) the notice sets forth the requirements for a request under subparagraph (E);
>
> (iv) the notice includes—
>
>> (I) a domestic contact telephone and facsimile machine number for the recipient to transmit such a request to the sender; and
>>
>> (II) a cost-free mechanism for a recipient to transmit a request pursuant to such notice to the sender of the unsolicited advertisement; the Commission shall by rule require

the sender to provide such a mechanism and may, in the discretion of the Commission and subject to such conditions as the Commission may prescribe, exempt certain classes of small business senders, but only if the Commission determines that the costs to such class are unduly burdensome given the revenues generated by such small businesses;

(v) the telephone and facsimile machine numbers and the cost-free mechanism set forth pursuant to clause (iv) permit an individual or business to make such a request at any time on any day of the week; and

(vi) the notice complies with the requirements of subsection (d) of this section;

(E) shall provide, by rule, that a request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if—

(i) the request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;

(ii) the request is made to the telephone or facsimile number of the sender of such an unsolicited advertisement provided pursuant to subparagraph (D)(iv) or by any other method of communication as determined by the Commission; and

(iii) the person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine;

75.     The FCC's regulations at 47 C.F.R. § 64.1200 (a) (4) (iii) & (v) expressly

require the following:

(iii) The advertisement contains a notice that informs the recipient of the ability and means to avoid future unsolicited advertisements. A notice contained in an advertisement complies with the requirements under this paragraph only if -

(A) The notice is clear and conspicuous and on the first page of the advertisement;

16

(B) The notice states that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, with such a request meeting the requirements under paragraph (a)(4)(v) of this section is unlawful;

(C) The notice sets forth the requirements for an opt-out request under paragraph (a)(4)(v) of this section;

(D) The notice includes -

(1) A domestic contact telephone number and facsimile machine number for the recipient to transmit such a request to the sender; and

(2) If neither the required telephone number nor facsimile machine number is a toll-free number, a separate cost-free mechanism including a Web site address or email address, for a recipient to transmit a request pursuant to such notice to the sender of the advertisement. A local telephone number also shall constitute a cost-free mechanism so long as recipients are local and will not incur any long distance or other separate charges for calls made to such number; and

(E) The telephone and facsimile numbers and cost-free mechanism identified in the notice must permit an individual or business to make an opt-out request 24 hours a day, 7 days a week.

...

(v) A request not to send future unsolicited advertisements to a telephone facsimile machine complies with the requirements under this subparagraph only if -

(A) The request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates;

(B) The request is made to the telephone number, facsimile number, Web site address or email address identified in the sender's facsimile advertisement; and

(C) The person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone

facsimile machine.

76. Exhibit A does not provide any of the information the TCPA requires for a compliant opt-out notice. For example, Exhibit A fails to state on the advertisement's first page that the recipient may make a request to the sender not to send any future advertisement by facsimile and that the sender's failure to comply within 30 days is unlawful.

77. Facsimile advertising imposes burdens on recipients that are distinct from the burdens imposed by other types of advertising. The required opt-out notice provides recipients the necessary information to opt-out of future fax transmissions, including a notice that the sender's failure to comply with the opt-out request will be unlawful. 47 C.F.R. § 64.1200 (a) (4).

78. Defendants failed to include compliant opt-out notice language in Exhibit A. Defendants' check-box is not on the first page of the advertisement. Defendants failed to include a toll-free telephone number and did not indicate that Plaintiffs or the class members can use that telephone number to have Defendants discontinue sending faxes in the future.

79. Defendants' instruction that Plaintiffs and other recipients may check the box to be removed from Defendants' list conflicts with the notice that submitting the form constitutes permission to provide other offers. Defendants' notice therefore fails because it would not permit Plaintiffs and other recipients to opt-out of receiving future advertisements.

80. Furthermore, Defendants' check-box, if treated as an attempted opt-out notice, does not set forth the requirements for Plaintiffs or any member of the

putative class to properly request an opt-out as explained by 47 C.F.R. § 64.1200 (a) (4) (v). Specifically, the fax does not inform Plaintiffs and other putative class members that they must identify the telephone number(s) of the telephone facsimile machine(s) to which the opt-out request relates. Additionally, the fax fails to inform Plaintiffs and the putative class that a request must be made to the telephone number, facsimile number, Web site address or email address identified in the sender's facsimile advertisement. Finally, the faxes fail to inform Plaintiffs and the putative class that the person making the request has not, subsequent to such request, provided express invitation or permission to the sender, in writing or otherwise, to send such advertisements to such person at such telephone facsimile machine.

81.     Facsimile advertising imposes burdens on recipients that are distinct from the burdens imposed by other types of advertising. The required opt-out notice provides recipients the necessary information to opt-out of future fax transmissions, including a notice that the sender's failure to comply with the opt-out request will be unlawful. 47 C.F.R. § 64.1200 (a) (4).

82.     Defendants' failure to include a compliant opt-out notice on their fax advertisements makes irrelevant any express consent or established business relationship ("EBR") that otherwise might have justified Defendants' fax advertising. 47 C.F.R. § 64.1200 (a) (4).

83.     The TCPA is a strict liability statute and Defendants are liable to Plaintiffs and the other class members even if their actions were negligent. 47

U.S.C. § 227 (b) (3).

84.     Even if Defendants did not intend to injure Plaintiffs and the other class members, did not intend to violate their privacy, and did not intend to waste their valuable time with Defendants' advertisements, those facts are irrelevant because the TCPA is a strict liability statute.

85.     If Defendants' actions were knowing or purposeful, then the Court has the discretion to increase the statutory damages up to three times the amount. 47 U.S.C. § 227 (b) (3).

86.     Health-Scripts is liable for the fax advertisements at issue because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, the faxes were sent on its behalf, or under general principles of vicarious liability, including actual authority, apparent authority and ratification.

87.     Janssen is liable for the fax advertisements at issue because it sent the faxes, caused the faxes to be sent, participated in the activity giving rise to or constituting the violation, the faxes were sent on its behalf, or under general principles of vicarious liability, including actual authority, apparent authority and ratification; and the faxes promoted the quality or commercial availability of Janssen's goods and products.

88.     Health-Scripts benefitted from the sending of the faxes in that it increased awareness of Health-Scripts marketing program and sought members to which Health-Scripts intended to market third party products for profit.

89. Janssen benefitted from the sending of the faxes in that its commercial presentation was promoted and its name and logo were communicated to those who might be inclined to prescribe or use Janssen's products.

90. Defendants knew or should have known that Plaintiffs and the other class members had not given express invitation or permission for Defendants or anybody else to fax advertisements about Defendants' goods, products, or services, that Plaintiffs and the other class members did not have an established business relationship with Defendants, that Exhibit A is an advertisement, and that Exhibit A did not display a compliant opt-out notice as required by the TCPA.

91. Defendants' actions damaged Plaintiffs and the other class members. Receiving Defendants' junk faxes caused recipients like America's Health to lose paper and toner consumed in the printing of Defendants' faxes. The subject faxes used Plaintiffs' and the class's fax machines and occupied Affiliated's fax line. The subject faxes cost Plaintiffs time, as America's Health and its employees wasted their time receiving, reviewing and routing Defendants' illegal faxes. That time otherwise would have been spent on Plaintiffs' business activities. Defendants' faxes unlawfully interrupted Plaintiffs' and the other class members' privacy interests in being left alone. Finally, the injury and property damage sustained by Plaintiffs and the other class members from the sending of unlawful fax advertisements occurred outside Defendants' premises.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and

severally, as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiffs as the representatives of the class, and appoint Plaintiffs' counsel as counsel for the class;

B.     That the Court award $500.00 in statutory damages for each violation of the TCPA or the FCC's regulations;

C.     That, if it finds Defendant(s) willfully or knowingly violated the TCPA's faxing prohibitions or the FCC's regulations prescribed thereunder, the Court exercise its discretion to increase the amount of the statutory damages award to an amount equal to not more than 3 times the amount;

D.     That the Court enter an injunction prohibiting Defendants from violating the TCPA; and

E.     That the Court award costs and such further relief as the Court may deem just and proper.

## COUNT II
## COMMON LAW CONVERSION

92.     Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

93.     Plaintiffs bring Count II on behalf of themselves and a class of similarly situated persons and against Defendant.

94.     By sending advertisements to their fax machines, Defendants improperly and unlawfully converted the class's fax machines to Defendants' use. Where printed (as in Plaintiffs' case), Defendants also improperly and unlawfully

converted the class members' paper and toner to Defendants' own use. Defendants also converted Plaintiffs' time to Defendants' own use, as they did with the valuable time of the other class members.

95. Immediately prior to the sending of the unsolicited faxes, Plaintiffs and the other class members each owned an unqualified and immediate right to possession of their fax machines, paper, toner, and employee time.

96. By sending them unsolicited faxes, Defendants permanently misappropriated the class members' fax machines, toner, paper, and employee time to their own use. Such misappropriation was wrongful and without authorization.

97. Defendants knew or should have known that the misappropriation of paper, toner, and employee time was wrongful and without authorization.

98. Plaintiffs and the other class members were deprived of the use of the fax machines, paper, toner, and employee time, which could no longer be used for any other purpose. Plaintiffs and each class member thereby suffered damages as a result of their receipt of unsolicited fax advertisements from Defendants.

99. Each of Defendants' unsolicited faxes effectively stole America's Health's time as its employees received, reviewed, and routed Defendants' unlawful faxes. Defendants knew or should have known that time is valuable, particularly at medical facilities.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, demands judgment in its favor and against Defendants, jointly and severally, as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiffs as the representatives of the class, and appoint Plaintiffs' counsel as counsel for the class;

B.     That the Court award appropriate damages;

C.     That the Court award punitive damages;

D.     That the Court award attorney's fees;

E.     That the Court award costs of suit; and

F.     That the Court award such further relief as it may deem just and proper under the circumstances.

Respectfully submitted,

AMERICA'S HEALTH & RESOURCE CENTER, LTD., an Illinois corporation, and AFFILATED HEALTH GROUP, LTD., an Illinois corporation, individually and as the representatives of a class of similarly-situated persons,

By: /s/ Phillip A. Bock

Phillip A. Bock
Bock, Hatch, Lewis & Oppenheim, LLC
134 N. La Salle St,, Ste. 1000
Chicago, IL 60602
Telephone: 312-658-5500
Facsimile: 312-658-5555

## CERTIFICATE OF SERVICE

I hereby certify that on October 31, 2016, I caused the foregoing to be filed using the Court's CM/ECF System which will send notification of such filing to all counsel of record.

/s/ Phillip A. Bock