# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **AMERICA'S HEALTH AND RESOURCE CENTER, LTD.; AFFILIATED HEALTH GROUP, LTD.,** <br><br> Plaintiffs, <br><br> v. <br><br> **PROMOLOGICS, INC.; JANSSEN PHARMACEUTICALS, INC.,** <br><br> Defendants. | **Case No. 16 C 9281** <br><br> **Judge Harry D. Leinenweber** |

## AMENDED MEMORANDUM OPINION AND ORDER

Defendant Janssen moves to strike the class allegations asserted by Plaintiffs America's Health & Resource Center, Ltd. and Affiliated Health Group, Ltd., and to bifurcate discovery. (Dkts. 75, 78.) Defendant Promologics has joined in those Motions. (Dkts. 87, 89.) For the reasons stated herein, the Court grants in part and denies in part the Motion to Strike the class allegations and grants the Motion to Bifurcate.

### I. BACKGROUND

The Court has previously summarized the facts of this case in an earlier ruling. *See, Am.'s Health & Res. Ctr., Ltd. v. Promologics, Inc.*, No. 16 CV 9281, 2017 WL 5001284, at *1 (N.D. Ill. Nov. 2, 2017). All that is relevant for now is that Plaintiffs

allege Defendants sent them, and each member of their proposed class, a fax in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227. (Am. Compl. ¶¶ 1-10, Dkt. 21.) Defendants contend that this class action is incurably defective, however, and so they move to strike those allegations. Beyond that, Defendants take issue with what they see as a shortage of proof to back up the viability of the named Plaintiffs' individual claims. Defendants accordingly move to bifurcate discovery so they and the Court can first ascertain whether the named Plaintiffs have individual claims before contending, if still necessary, with the proposed class allegations.

## II. <u>ANALYSIS</u>

### A. Motion to Strike Class Allegations

According to Defendants, the Court should strike the class allegations in part or in whole for three reasons: (1) Under the Supreme Court's decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1783-84 (2017), this Court lacks personal jurisdiction over the Defendants as to the claims of the non-Illinois-resident class members; (2) due to an imprecise class definition, the named Plaintiffs' claims are not typical of the claims of the other class members; and (3) individualized issues of consent predominate over common questions of law or fact, so the class fails to clear Federal Rule of Civil Procedure

23(b)(3), as required here.  The Court finds only the first of these arguments convincing.

### 1. *Personal Jurisdiction under Bristol-Myers Squibb*

Personal jurisdiction may be "general" or "specific." General jurisdiction lies only where the defendant has "continuous and systematic" contacts with the forum state. *See, Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415-16 (1984). In all but the most exceptional cases, general jurisdiction over a corporation is limited to its place of incorporation and/or principal place of business.  *Leibovitch v. Islamic Republic of Iran*, 188 F. Supp. 3d 734, 746 (N.D. Ill. 2016) (citing *Daimler AG v. Bauman*, 134 S Ct. 746, 761 n.19 (2014)), *aff'd*, 852 F.3d 687 (7th Cir. 2017).  In contrast, "[s]pecific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). In either case, the plaintiff must also demonstrate that the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945).

Despite contending in their Complaint that Defendant Janssen is subject to this Court's general jurisdiction (Am. Compl. ¶ 18, Dkt. 21), Plaintiffs make no general jurisdiction arguments in their present briefing as to either Defendant, both of which are incorporated and maintain their principal places of business outside of Illinois. *See, Daimler*, 134 S. Ct. at 761 n.19. As such, the remaining jurisdictional inquiry is specific. Here, that inquiry depends on the Supreme Court's ruling in *Bristol-Myers Squibb.* 137 S. Ct. at 1783-84. That case began as a mass tort action in California state court involving hundreds of individual plaintiffs, most of whom were not California residents. *Id.* at 1777. On review, the Supreme Court considered the compatibility of the state court's exercise of jurisdiction with the Fourteenth Amendment's due process clause and concluded that the state court lacked specific jurisdiction over the defendant as to the claims of the nonresident plaintiffs. *Id.* at 1779, 1783-84. In so holding, the Court clearly limited its ruling to state court jurisdiction, thus "leav[ing] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1784 (citation omitted). That limitation is no barrier to the rule's application here, however, where this Court sits in diversity jurisdiction and accordingly looks to Illinois state law. *See, LDGP, LLC v. Cynosure, Inc.*, No. 15 CV 50148, 2018 WL 439122, at *2 (N.D. Ill.

Jan. 16, 2018) (applying *Bristol-Myers Squibb* holding in case of diversity jurisdiction); *McDonnell v. Nature's Way Prods., LLC*, No. 16 CV 5011, 2017 WL 4864910, at *4 n.7 (N.D. Ill. Oct. 26, 2017) (same).

But that is not the only possible barrier to *Bristol-Myers Squibb*'s application to this case. What remains is whether that case applies with equal force to class actions as to mass torts and, if so, whether the Defendants' personal-jurisdiction objection predicated on that case is either timely or, if untimely, excusable. The precise membership of the proposed class is still unclear, but the allegations suggest that the proposed nationwide class contains members who neither reside, nor were harmed in, Illinois. It is this group of plaintiffs whose claims Defendants seek to shear from the case, and if the Court answers the questions presented above in the affirmative, Defendants' efforts will prevail.

As for the first question: *Bristol-Myers Squibb* left open whether its jurisdictional rule applies in the class action context. *See* 137 S. Ct. at 1789 n.4 (Sotomayor, J., dissenting) ("The Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there."). District court rulings have begun to fill that vacuum,

though with contradictory results. *Compare Casso's Wellness Store & Gym, LLC v. Spectrum Lab. Prods., Inc.*, No. 17 CV 2161, 2018 WL 1377608 (E.D. La. Mar. 19, 2018); *In re Morning Song Bird Food Litig.*, No. 12 CV 01592, 2018 WL 1382746, at *5 (S.D. Cal. Mar. 19, 2018); *Sanchez v. Launch Tech. Workforce Sols., LLC*, 297 F. Supp. 3d 1360, 1365-66 (N.D. Ga. 2018); *In re Chinese-Manufactured Drywall Prod. Liab. Litig.*, No. MDL 09-2047, 2017 WL 5971622, at *12 (E.D. La. Nov. 30, 2017) (cases finding *Bristol-Myers Squibb* inapplicable to class actions), *with Maclin v. Reliable Reports of Tex., Inc.*, No. 17 CV 2612, 2018 WL 1468821, at *4 (N.D. Ohio Mar. 26, 2018); *Wenokur v. AXA Equitable Life Ins. Co.*, No. 17 CV 00165, 2017 WL 4357916, at *4 n.4 (D. Ariz. Oct. 2, 2017); *In re Dental Supplies Antitrust Litig.*, No. 16 CV 696, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) (finding the opposite). This Court has also weighed in and agreed with those courts finding *Bristol-Myers Squibb* applicable to class actions. *See, DeBernadis v. NBTY, Inc.*, No. 17 CV 6125, 2018 WL 461228, at *2 (N.D. Ill. Jan. 18, 2018). That ruling comports with the position taken by the other courts in this District which have answered this question. *See, McDonnell*, 2017 WL 4864910, at *4; *Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 874 (N.D. Ill. 2017).

Those decisions finding *Bristol-Myers Squibb* applicable to class actions have generally observed that due process requirements do not differ between class and non-class actions.

In either event, as the Supreme Court articulated, due process requires "a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb*, 137 S. Ct. at 1781; *see, Greene*, 289 F. Supp. 3d at 874 (stating same); *Maclin*, 2018 WL 1468821, at *4 (remarking that the respective due process protections of the Fifth and Fourteenth Amendments engender the same effects as far as personal jurisdiction are concerned); *In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115, at *9 ("The constitutional requirements of due process do[] not wax and wane when the complaint is individual or on behalf of a class."). This Court agrees with that observation and now endorses it once again, reflecting this Court's belief that *Bristol-Myers Squibb* applies in equal measure to class actions.

But answering this first question in the affirmative does not yet give Defendants a victory in their quest to cut down the proposed class. There is also the question of timeliness. Plaintiffs contend that even if this Court believes *Bristol-Myers Squibb* applies with equal force to class actions, Defendants' Motion still fails because, by challenging this Court's personal jurisdiction, Defendants' filing is nothing more than a 12(b)(2) motion in disguise. And as such, it is susceptible to the same timeliness requirements—and the attendant waiver penalties for tardiness—as any other challenge to personal jurisdiction.

Ordinarily, defendants must assert personal jurisdiction challenges in their first responsive pleading, or else waive them. FED. R. CIV. P. 12(b)(2), (h)(1); *see, Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 705 (1982) (explaining failure to object timely to personal jurisdiction constitutes waiver of said objection). Defendants suggest they should not be held to that standard here, however, where they moved to dismiss the Amended Complaint on May 25, 2017—roughly one month before the Supreme Court issued *Bristol-Myers Squibb*. According to Defendants, that opinion signified an intervening change in the law, and so they cannot be held to account for having failed, pre-*Bristol-Myers,* to raise the new defense that decision made available to them. This Court is not convinced.

First, the Supreme Court admonished that the result in *Bristol-Myers Squibb* represented a "straightforward application" of "settled principles regarding specific jurisdiction." 137 S. Ct. at 1782-83. This was an odd characterization for the Court to deploy if it intended its decision to be interpreted as a change in controlling law. Second, it is not clear that pre-*Bristol-Myers* authority precluded Defendants from raising their personal jurisdiction challenge when they filed their first responsive pleadings in May 2017, meaning Defendants should not be excused for failing to do so. *Cf. Hawknet, Ltd. v. Overseas Shipping Agencies*, 590 F.3d 87, 92 (2d Cir. 2009) (remarking that personal

jurisdiction defense is not waived where, prior to the time it was raised, it would have been "contrary to controlling precedent"). The First Circuit has explained that a party may be excused for failing to raise a then-unavailable defense, *i.e.*, a defense that, "if asserted, would have been futile under binding precedent." *Bennett v. City of Holyoke*, 362 F.3d 1, 7 (1st Cir. 2004); *accord Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, 301 F. Supp. 3d 840, 862 (N.D. Ill. 2018) (quoting and applying same). The problem for Defendants, who filed their first responsive pleadings over a year ago (Dkts. 44, 46), is that this Court is not aware of any pre-*Bristol-Myers*, Seventh-Circuit authority that would have rendered futile a challenge to personal jurisdiction as to the non-resident, proposed class members. *Accord Greene*, 289 F. Supp. 3d at 876 (reciting that pre-*Bristol-Myers* Seventh Circuit precedent "did not foreclose [defendants] from pressing [the *Bristol-Myers*] theory" as an affirmative defense). Without an intervening change in the law and without an earlier, controlling authority blockading such efforts, the Defendants' failure to mount a timely challenge to personal jurisdiction constitutes forfeiture of that challenge.

However, though the Defendants forfeited their personal-jurisdiction challenge by failing to raise it earlier, the Court will excuse the forfeiture. In a similar ruling, Judge Gary Feinerman remarked that under Supreme Court guidance, lower courts

"'retain [] the independent power to identify and apply the proper construction of governing law,' even where the parties 'fail[] to advert' to the applicable rule in their own briefing." *Greene*, 289 F. Supp. 3d at 877 (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991)) (excusing forfeiture of *Bristol-Myers* jurisdiction challenge); *see also, ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001) (excusing forfeiture and remarking that "[f]ederal courts are entitled to apply the right body of law, whether the parties name it or not"), *as amended* (July 2, 2001). The Supreme Court made clear in *Bristol-Myers* what standard to apply in scrutinizing personal jurisdiction as to the claims of nonresident plaintiffs, and this Court will follow that direction. *See, Practice Mgmt.*, 301 F. Supp. 3d at 864 (endorsing *Greene*'s forfeiture reasoning).

In this class action, the *Bristol Myers* opinion is applicable and its import clear: The Court lacks jurisdiction over the Defendants as to the claims of the nonresident, proposed class members. As such, the Defendants' Motion is granted in relevant part, and those class members who are not Illinois residents and who allegedly received the fax outside of this state's borders may not be part of this case. To the extent that the proposed class allegations comprise any such unnamed plaintiffs, they are stricken. Subtracting those proposed class members shrinks the class but might not destroy it; the Complaint is unclear as to how

many of the proposed plaintiffs are Illinois residents, so the Court cannot yet say whether the remaining balance is sufficiently numerous to satisfy Rule 23. Given that uncertainty, the Court will address the rest of Defendants' Motion-to-Strike arguments lest any of them succeeds in further reducing the proposed class.

### *2. Typicality Challenge*

Beyond their jurisdictional assault, Defendants also attack the proposed class under Federal Rule of Civil Procedure 23. To do so, Defendants cite to this Court's reasoning in another TCPA case, *A Custom Heating & Air Conditioning, Inc. v. Kabbage, Inc.*, No. 16 CV 2513, 2018 WL 488257, at *4 (N.D. Ill. Jan. 18, 2018). There, the Court found that because the proposed class definition failed to distinguish between those members who received unsolicited faxes and those members who received solicited faxes, the claims of the named plaintiffs—who allegedly received only the former variety—were not typical of the claims of the class. *Id.* at *4 (remarking upon absence of congruence between those claims given that the class members who received only solicited faxes would not have a valid TCPA claim at all). However, the *Kabbage* opinion did not take into account that this typicality critique cannot hold if the solution is to add a consent requirement to the class definition. If the instant class were defined by a legal parameter such as consent of the recipient class member, the result would be an impermissible "fail-safe" class in which "a class

member either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015) (citation omitted). Such classes are non-ascertainable and cannot be certified. *See, e.g.*, *G.M. Sign Inc. v. Stealth Sec. Sys., Inc.*, No. 14 CV 09249, 2017 WL 3581160, at *3 (N.D. Ill. Aug. 18, 2017) (citing *Mullins*, 795 F.3d at 660). Accordingly, Defendants' typicality objection carries no weight.

There is one other aspect of the *Kabbage* case that bears on the instant litigation, however. *Kabbage* detailed the history of the now-defunct Solicited Fax Rule, which once mandated that under the TCPA, all faxes, whether solicited or not, were required to include an opt-out notice. *Id.* at *2. A consolidated Hobbs Act appeal decided by the D.C. Circuit invalidated that rule in a decision which is binding on this Court. *See, id.* (citing *Bais Yaakov of Spring Valley v. FCC*, 852 F.3d 1078, 1083 (D.C. Cir. 2017), *cert. denied*, 138 S. Ct. 1043 (2018)). The Defendants point out that the Amended Complaint, which predates *Yaakov,* frames the proposed class in terms of the Solicited Fax Rule's opt-out requirement which *Yaakov* invalidated. The proposed class is:

> Each person that was sent one or more facsimiles from [Defendants] inviting them to participate in a promotional educational program *that did not state on its first page that the fax recipient may request that the sender not send any future fax and that the failure*

> *to comply with such a request within 30 days would be unlawful.*

(Am. Compl. ¶ 50 (emphasis added).) Because this class definition rests upon abrogated authority, it does not properly describe a class of TCPA plaintiffs. The Court accordingly grants Defendants' Motion to Strike this definition, but allows Plaintiffs leave to amend.

### 3. *Predominance Challenge*

As their final argument, Defendants charge that individualized issues of consent predominate over common questions of law or fact and thus confound class certification. FED. R. CIV. P. 23(b)(3). But "where the defendant's objection to class certification fails to set forth specific evidence 'and instead only makes vague assertions about consent,' individualized issues regarding consent will not predominate over common questions of law or fact." *Karpilovsky v. All Web Leads, Inc.*, No. 17 CV 1307, 2018 WL 3108884, at *5 (N.D. Ill. June 25, 2018) (quoting *Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 587 (N.D. Ill. 2018) (citation omitted)). Though the Defendants assert in their papers that the proposed class includes members "who provided consent and/or had an ongoing business relationship with Defendants," the Defendants have not produced any evidence whatsoever to back up that assertion. (Mem. in Supp. of Mot. to Strike at 10, Dkt. 76.) Supposition alone does not create a meritorious consent objection

in this context. *See, Savanna Group, Inc. v. Trynex, Inc.*, No. 10 CV 7995, 2013 WL 66181, at *3-4 (N.D. Ill. Jan. 4, 2013) (St. Eve, J.) (rejecting defendant's consent-inquiry-based predominance objection to class definition because defendant failed to offer specific evidence of consent). Defendants' predominance objection thus fails.

### B. Defendants' Motion to Bifurcate

In their second Motion, Defendants seek to bifurcate discovery and thus exchange, first, information related to the named Plaintiffs' individual claims, and thereafter, information related to the claims of the proposed class as a whole. According to Defendants, this will help the parties quickly determine whether the named Plaintiffs have viable claims. If they do not, perhaps the parties can entirely forgo class-wide discovery, saving resources and expense on all sides. *See, Chavez v. Ill. State Police*, 251 F.3d 612, 630 (7th Cir. 2001) ("[If] the court determines that the named plaintiffs' claims lack merit, such a decision ordinarily, though not invariably, disqualifies the named plaintiffs as proper representatives, thus resolving the issue of class certification." (citation and internal quotation omitted)). Whether to bifurcate discovery is a determination that rests within the discretion of the trial court. *See, Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, No. 02 CV 2523, 2004 WL 609326, at *2 (N.D. Ill. Mar. 23, 2004) (citations omitted); *cf. Sattar v.*

*Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998) ("[D]istrict courts have broad discretion in matters related to discovery.").

The present litigation is poised to cross the two-year mark, and yet Plaintiffs have not produced basic, requested discovery which would prove up their individual claims. They attached the allegedly unlawful fax to their Amended Complaint, but that document does not identify the telephone number(s) of the fax machine(s) that received it nor does it explain in any other way how Plaintiffs came to obtain it. (Copy of Fax, Dkt. 21-1.) To date, Plaintiffs have not provided verified interrogatory responses. After Defendants filed their Motion to Bifurcate, Plaintiffs made good on one of their promises to supplement their discovery responses by providing a fax number for the machine that allegedly received the unlawful communique. (*See,* Pls.' Resps. to Defs.' First Set of Interrogatories, Dkt. 80-1, -2 (Plaintiffs responding simply, "will supplement" in response to request for the telephone number that received the fax).) But as it happens, this disclosure confounds, rather than clarifies, matters: Defendants respond by filing a declaration stating that they have no record of sending any fax to that number. (Wurtsbaugh Decl. ¶ 4, Dkt. 103-1.)

Bifurcation is not always warranted in TCPA class actions, nor is it universally appropriate or helpful. But in the circumstances presented here, where some limited, first-stage

production could stave off substantial wasted efforts, the Court believes bifurcation is appropriate. *See,* FED. R. CIV. P. 1 (stating that the Federal Rules of Civil Procedure should be administered "to secure the just, speedy, and inexpensive determination of every action and proceeding"). The Motion to Bifurcate Discovery is granted.

### III. CONCLUSION

For the reasons stated herein, Defendants' Motion to Strike Class Allegations is granted in part and denied in part, and their Motion to Bifurcate Discovery is granted.

**IT IS SO ORDERED.**

                                                   Harry D. Leinenweber, Judge
                                                   United States District Court

Dated: 7/19/2018